## GRAHAM *v.* GRAHAM.

Notice by a party to an arbitration that he will not attend at the hearing by the umpire is a waiver of a right to notice of the time and place of hearing: *aliter*, of a mere expression of intention not to attend.

An umpire is not bound to examine witnesses unless requested.

If one only of the parties attend, and furnishes books and answers questions when requested, the award is not vitiated.

Where there was a submission by deed of all difficulties arising out of a partnership, it seems the arbitrators may include payments made by one of the parties on account of the joint liabilities after the date of the submission. But where it was agreed by parol, pending the submission, that such party should take the books and. pay the debts of the firm, he is entitled to credits therefor: this being an implied extension of the terms of the submission.

Parties cannot object to the examination of the arbitrators in an action on the award.

IN error from the Common Pleas of Westmoreland.

Debt on an award. The submission, which was by deed, recited that controversies had arisen between Richard and Robert Graham, in reference to their partnership dealings and accounts, and also in regard to their other business and dealings; and being desirous finally to end and determine all their disputes, difficulties, and controversies, they had agreed to refer all their said disputes, controversies, and difficulties to the award of J. M. and J. N., with the privilege to the referees of selecting an umpire, &c. The appointment of an umpire and his award were shown to be regular in point of form. The defendant proved by the umpire (under exception), that he had not given notice to the parties. The plaintiff attended, and furnished books and information when requested. The defendant never attended. The matters were explained to the umpire, by the referees; and after examining the books, &c., an account was stated, and plaintiff was credited for payments made up to the date of the award. The referees proved, that at their first meeting, it was proposed that one of the parties should take the books of the uncollected debts of the firm; and defendant refusing to do this, it was agreed plaintiff should do so. It was then stated that certain creditors of the firm were pressing their claims; and it was agreed by the parties by parol, that plaintiff should take the books, collect the debts, and pay the claims as soon as possible.

The plaintiff then proved by one of the referees, that after the umpire was appointed, defendant told him he had been advised not to attend, and he would not appear. Defendant handed him

a paper, containing explanations, which he requested should be laid before the umpire. There were no witnesses examined by the umpire; but explanations were made to him by the referees, from which and the books he made his award.

KNOX, P. J., instructed the jury, that defendant had waived his right to a notification of the intended hearing by the umpire, but it was his duty to examine the witnesses; that he had no right to take into consideration matters occurring since the submission; and these matters vitiated the award, and might be proved in this action for want of a court of equity.

*Kuhns* and *Foster*, for plaintiff in error.

*Cowan* and *T. Williams*, contrà.

*Nov.* 20. GIBSON, C. J.—The common-law award on which this action is brought, was impugned at the trial for want of notice to Richard, the defendant, of the time and place of hearing; for want of examination of the witnesses by the umpire; and for want of conformity to the submission. In regard to the first, the evidence was, that formal notice of the time and place of hearing by the umpire had not been given; but that Richard being told of the umpirage by one of the arbitrators, declared that, acting by the advice of his counsel, he would not appear; in earnest of which he handed a paper to the arbitrator, with instruction to lay it before the umpire, in order to bring into his view certain accounts which he feared might be overlooked. Notice may be waived in advance by a communication addressed to the person who would be bound to give it, and had there been merely a declaration of intention, in this instance, without the message which accompanied it, there would perhaps have been no waiver. It is true that arbitrators are not *functi officio* by the appointment of an umpire; for they may still go on and award; and where they do not, it is their business to give information and assistance to the umpire, at least they may do so. But though it was their province to give notice to the parties of their own meetings in the first instance, and of the appointment of the umpire in the second, it became his province, having the duties to perform which had before rested on them, to appoint the time and place of his sitting, and to warn the person concerned: Kyd on Awards, 59. But as a party may beforehand signify his determination not to appear, and thus dispense with notice of the time and place, he may do it in person, or by an agent authorized to communicate it. In this instance there was more than an expression of intention. It was accompanied by a

paper to be laid before the umpire and used in the party's defence, and the declaration of his intention thus assumed the character of a communication, as it would have done had it been confided to a stranger. Besides, without an appearance, a party is not entitled to the benefit of matter of defence, or, having given it, to treat the proceeding as *ex parte*. After that it would be idle to trouble him with notice.

The next point is unattended with difficulty. Before an umpire has made his award, he is bound to examine the witnesses if a party require it; but not without request, or afterwards. In Hall *v.* Lawrence, 4 T. Rep. 589, the arbitrators had regularly heard the evidence, and disagreeing, had stated it to an umpire named in the submission, who made his umpirage without a fresh examination of the witnesses, subsequently to which, the losing party requested him to hear the witnesses himself, and on his refusing to do so, moved the court to set the umpirage aside; but the rule to show cause was discharged with costs. To the same effect is Tunno *v.* Bird, 2 Nev. & Mann, 328; S. C. 5 Barn. & Ad. 488. Now though the umpire, in the present case, did not examine the witnesses, no one requested him to do so. He examined the testimony taken by the arbitrators, who laid the whole of it before him, making explanations without stating their points of difference. As the hearing was in some sort *ex parte* as to Richard, Robert furnished the books called for, pointed out nothing, and merely answered questions. There certainly was no misbehaviour in that.

But the umpire debited Robert with receipts, and credited him with payments to the time of the award; whence an argument that he went beyond the submission, which extended no further than " disputes, difficulties, and controversies," existing at the time of it. These matters, however, if not within the letter, were within the spirit of it; for it would have been impossible to settle these disputes, difficulties, and controversies, growing as they did out of " their partnership dealings accounts," as they called them in the submission, without disposing of them. It is certain that an award of disputes, arising after the submission, is void—at least for the excess—for which we have the authority of Barnardiston *v.* Foulyer, 10 Mod. 204, decided on the authority of 1 Roll. Abr. 145, pl. 8. But these debits and credits were, in truth, not subjects of dispute. It was formerly held, that to award a release of actions to the time of the award, was bad; but that the law is held differently now, is shown by Squire *v.* Grevell, 6 Mod. 34; Abrahat *v.* Brandon, 10 Mod. 200; Hooper *v.* Pierce, 12 Mod. 116;

and Perry *v.* Nicholson, 1 Bur. 278. And the reason given for it is, that it shall not be intended before it is shown that a release of actions subsequent to the submission was meant. It was not shown here, nor could it be, that the receipts and payments did not grow out of matters within the submission. It was found, while the cause was before the arbitrators, that the partnership debts were pressing the firm, and that it was necessary to collect the debts due to it to meet them; to effect which, the parties agreed that Robert should take the books, collect, and pay out—in short, become the liquidating partner—and this was virtually an agreement that the subsequent debts and credits should come into the award. A submission by specialty, may be altered by parol; and whether altered or not, it is to be construed largely. It might well be doubted whether this umpirage would not be good without an alteration; but the subsequent agreement clearly gave power to wind up the concern, and settle all the partnership accounts, and consequently to include receipts and payments, whether subsequent or prior to the submission.

The objection to the competency of the arbitrators and umpire as witnesses, is unfounded. It is well settled that an arbitrator may prove facts that came under his notice in the progress of the hearing, the only question being, whether he is bound to testify. On the authority of a note of Sir James Mansfield's decision at *nisi prius*, in Ellis *v.* Saltau, Lord Tenterden seems to have conceded in Johnson *v.* Durant, 4 C. & P. 327, that he is not; but no satisfactory reason appears to have been given for it. Sir James told the witness he need not be examined unless he chose it, thinking that an arbitrator was not to be afterwards worried as a witness. But if unwilling to take the chance of it, ought he not to decline the office in the first instance, rather than acquire important information by means of it, and withhold it to the injury —perhaps the ruin—of an innocent man? Every man's convenience must give place to the necessities of distributive justice. But notwithstanding these *nisi prius* decisions, the point is still unsettled; and as it does not arise in the case before us, we say no more than that, as the witnesses themselves did not refuse to be sworn, no one else could object to it.

'Judgment reversed, and a *venire de novo* awarded.