WILLARD S. BECK *v*. TEOFIL KULESZA.

(*June* 1, 1926.)

Rice and Rodney, J. J., sitting.

*William W. Knowles* and *Elwood F. Melson* for plaintiff.
*William Prickett* for defendant.

Superior Court for New Castle County, May Term, 1926.
No. 6, September Term, 1924.

RICE, J.: ▮ In actions between the person assessed and a third person assessment records are not competent evidence of the value of the property assessed; the objection is, therefore, sustained. *Griffith v. Johnson,* 1 *Harr.* 136; 10 *Ency. of Ev.* 728; 13 *Ency. of Ev.* 455.

▮ James B. Dawson, a witness produced by the defendant, after testifying that he was one of the referees appointed by the court in the case of *Franciszek Zeranski and Anna Zeranska v. Willard S. Beck,* in 1919, was then asked: "As such referee did you inspect the course of Sample Run below the road and between the lands of Beck and Zeranski?"

Knowles, one of the attorneys for the plaintiff, objected to the question, claiming that the witness was disqualified because of having been a referee.

Prickett, attorney for the defendant, stated that he was not asking the witness to contradict anything in his report or the reasons that led up to that report, in the case above referred to, but was merely asking him to state what he saw when he was on the

property referred to in his question. He cited 28 *R. C. L.* 468; *Graham v. Graham,* 9 *Pa.* 254, 49 *Am. Dec.* 560; *Stewart v. Telford Road Co.,* 3 *Pa. Super. Ct.* 89.

RICE, J.: The question presented is whether a referee in a former proceeding between the parties, or privies to parties in this case, is incompetent to testify as to physical conditions that he observed with respect to the land while he was serving as a referee.

The Court are of the opinion that the witness is not disqualified. The objection is, therefore, overruled. The witness then answered the question in the affirmative.

RICE, J., charging the jury:

In this action Willard S. Beck, the plaintiff, seeks to recover damages from Teofil Kulesza, the defendant. The claim of the plaintiff is set forth in his declaration, and is substantially as follows: The plaintiff alleges that he is the owner of a farm property in Pencader Hundred, New Castle County, and the defendant is the owner of the farm property adjoining on the north; that the boundary between the two properties is along the line of two small streams of water, generally known as Sample Run and South Branch; that Sample Run from time immemorial carried the water from the Mill Pond, along, between and beyond the properties of plaintiff and defendant; that South Branch Stream was a portion of the tail race leading from the mill formerly located on the property of plaintiff, which stream or race carried the surplus waters of Sample Run, in case of an unusually heavy downpour of rain; that the entire depth and breadth of Sample Run was necessary for the proper carrying off of the waters of said Mill Pond, and for the proper drainage from surface and other waters of the lands of plaintiff; that the defendant did, on or about the twenty-ninth day of November, 1923, and on divers other days between that date and the eighth day of May, 1924, negligently and wrongfully cause to be placed in Sample Run, small trees, brush, waste, dirt and other refuse matter, and did wrongfully and negligently thereby obstruct and dam up the said Sample Run, so as to cause all the waters which have hitherto flowed down Sample Run, to flow into South

Branch, and overflow the banks of South Branch, and run over, into and upon the adjoining lands of the plaintiff, whereby about five acres of plaintiff's land became and was overflowed, drowned, destroyed and rendered useless, damaging the plaintiff in the sum of three thousand dollars. That by reason of the negligent and wrongful acts of the defendant about ten cords of wood of the value of about one hundred and fifty dollars were washed from the lands of the plaintiff, and about one hundred cut logs of the value of about one thousand dollars were also washed from his lands.

The second count in the declaration is similar to the first count, the material difference being that in that count the plaintiff alleges that the defendant, contriving and wrongfully and unjustly intending to unnecessarily injure, prejudice and aggrieve the plaintiff in the enjoyment and ownership of his lands, did wilfully, intentionally and wrongfully cause to be placed in Sample Run, small trees, etc., and thereby dammed up Sample Run and caused its waters to flow into South Branch Stream and to overflow the banks of South Branch, to the damage of the plaintiff.

The defendant denies that he negligently, wrongfully or wilfully dammed up Sample Run, but contends that in 1917, the plaintiff dug out the banks of that Run and diverted the waters of the stream from its regular and natural course, and that the waters of Sample Run continued to flow in the new course, until subsequent to the year 1922; that after 1922, in an action in this court between Franciszek Zeranski and Anna Zeranski, as plaintiffs, and who were predecessors in title of the defendant in this case, and Willard S. Beck, the plaintiff in this action, as defendant, it was determined that the course of Sample Run, formed a dividing line between the lands of plaintiff and lands of defendant, at the point in question, and followed the course of the stream known as South Branch; that thereupon the defendant lawfully and rightfully dammed the stream in its then course and caused it to run in the course it had followed previous to 1917, when, as he contends, the stream had been diverted by the plaintiff. The defendant also contends that the damages as claimed by the plaintiff are grossly ex-

cessive, and that little or no damage was caused to plaintiff's land by the overflow waters from the streams in question, other than was naturally caused by the flooding of the lowlands, which happened as frequently and to the same degree before the run was blocked or dammed by the defendant as it has since.

The plaintiff in turn denies that he diverted the run or any part of it from its ancient and natural course in 1917, or at any other time, and claims that he only cleaned debris and foreign matters from the natural course of the stream.

One of the primary and important questions of fact for you to determine, is whether the course which has been termed the northerly course, was the ancient, accustomed and natural course of Sample Run, or was one of the ancient, accustomed and natural courses of that stream. This is important because it is the question that has given occasion for much of the controversy between the parties to this action. It is for you to say from the evidence whether the northerly course was an ancient and natural course of Sample Run, as claimed by the plaintiff, or whether that course was a recent and artificial one, as claimed by the defendant. For if you should determine from the evidence that the northerly course was not the natural or accustomed course of the run, or one of its natural and accustomed courses, then your verdict should be for the defendant; but if you should determine that the northerly course was its natural or accustomed course, or one of its natural and accustomed courses, then you must also determine whether or not the defendant negligently or wilfully dammed or obstructed that course and caused the water which would naturally flow through the northerly course, to flow into the South Branch and overflow the banks of South Branch, to the damage of the plaintiff. Before the plaintiff can recover, he must prove by a preponderance of the evidence that the course alleged to have been obstructed by the defendant, was a natural water course, with the characteristics of permanence.

A run may be called a water course, and for the purposes of this case a water course may be defined as a stream of water having the characteristics of permanence, flowing along a defined channel, with a bed and banks. The boundary of a water course is generally

regarded as its banks or confines at ordinary high water. 27 *R. C. L., p.* 1064.

■■ A landowner has the right to divert the natural course of a stream through his property, provided he returns it to its natural channel before it reaches the land of the lower riparian owner, and also providing that he must use due care to provide the stream with a new channel of sufficient capacity to carry off not only the ordinary flow of water, but also such high waters as may reasonably be anticipated from heavy and protracted rains, and which the old channel was capable of carrying away without damage to neighboring property. However, irrespective of any question of negligence or wilfulness, a riparian owner who, by his wilful act, diverts the waters of a natural stream from its accustomed channel, and causes it to flow upon the lands of his neighbor, or into a nearby stream, thereupon causing the nearby stream to overflow its banks, is liable for the damages resulting from such diversion. Any obstruction of the natural course of a stream is done at the risk of being answerable in damages to other riparian owners who sustain a loss thereby. 27 *R. C. L., pp.* 1096-1100.

■ A riparian owner has the right within a reasonable time to change a stream from an artificial course through and over his land, back to its natural or accustomed course, and this would be especially so if the artificial course should be made by another adjoining riparian owner, for the purpose of diverting the stream from its accustomed or natural course.

If you should find from the evidence that any damage to plaintiff's land or property was not caused by any negligent, wrongful or wilful act of the defendant, as alleged by the plaintiff, your verdict should be for the defendant.

■ It has been determined by a proceeding in this court, the record of which has been admitted into evidence in this case, that the course of Sample Run, as it appears on the blue line in the plot known as Plaintiff's Exhibit No. 1, is a course of Sample Run forming a boundary or dividing line between land owned by the plaintiff and land owned by the defendant; but such a determination is not necessarily conclusive upon the question whether or not the north-

erly course, as shown by the plot, is also a natural and accustomed course of that stream. This is a question for your determination from all the evidence.

(The Court here charged on the law relating to the conflict and preponderance of evidence.)

█ The plaintiff in this case claims not only compensatory damages, but also exemplary or punitive damages. It is the law that in actions of this character the jury may, if they are satisfied from the testimony they should do so, award what are known in the law as exemplary or punitive damages. But it is for the jury in every case to determine from the testimony, first, whether they shall award to the plaintiff compensatory damages; and, second, whether in addition to such damages, if given, they should award also exemplary or punitive damages. To justify you in giving exemplary or punitive damages you must be satisfied from the testimony that the injury complained of was not only committed by the defendant and was wrongful and unlawful, but that it was also malicious, or wilful and wanton in its character.

█ If your verdict should be for the plaintiff, and for compensatory damages only, it should be for such an amount as would reasonably compensate him for the injury to his land, caused by the negligent or wilful act or acts of the defendant, if any, the measure being the difference between the fair value of the land before the injury complained of, and its fair value after such injury, as disclosed by the evidence, and adding thereto the value of cut logs and cord wood, as shown by the evidence to have been lost by the plaintiff, as a result of defendant's negligent or wilful conduct, if any.

If your verdict should be for the defendant, it should simply be, "We find for the defendant."