887 So.2d 1 (2004)
Vereta LEE
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. 2003 CW 0711R.
Court of Appeal of Louisiana, First Circuit.
June 30, 2004.
Writ Denied November 15, 2004.
*2 Charles W. Rea, Baton Rouge, for Plaintiff/Respondent Vereta Lee.
Sanettria R. Glasper, Robert L. Hammonds, Hammonds & Sills, Baton Rouge, for Defendant/Relator East Baton Rouge Parish School Board.
Before: PARRO, McDONALD, and McCLENDON, JJ.
PARRO, J.
The East Baton Rouge Parish School Board (the school board) is the relator in this writ action; respondent is Vereta Lee. This writ action is before this court on remand from the supreme court, which granted relator's request for a supervisory writ and remanded the matter to this court for briefing, argument, and opinion.

FACTUAL AND PROCEDURAL BACKGROUND
After notice and a hearing, the school board found Lee guilty of "willful neglect of duty," suspended her for five years, and barred her from teaching in East Baton Rouge Parish schools. Lee, a tenured teacher with eighteen years' experience, sought judicial review of this decision with the district court and subpoenaed a school board member for a deposition.[1] The school board moved for a protective order, claiming Lee had no right to present new evidence to the district court, because the district court was sitting in an appellate capacity in reviewing the decision, and because the school board members functioned in a quasi-judicial capacity and were entitled to immunity. Lee claimed the deposition testimony was required to show the district court that, despite what might be indicated by the hearing transcript, there were procedural irregularities that were not and could not be reflected in the record. She said some school board members were totally inattentive, eating snacks and chatting during the hearing, and claimed the depositions would demonstrate that the school board was predisposed to find her guilty, thereby rendering its decision arbitrary and capricious.
The district court heard arguments at the hearing on the motion for a protective *3 order, and summarized its conclusions as follows:
I can't substitute my opinion for [the school board's].... I can't go on the weight of the evidence. I must determine whether there is evidence there. And if there is evidence there upon which they could hang their hat, I have to affirm. So no matter how little evidence is there, if they're not listening to the other side at all, they may have acted arbitrarily and capriciously. And so the motivations as to going into the hearing, I think, are something to determine whether or not the court can make a decision as to whether the actions were arbitrary or capricious, okay? Sometimes you need to know what was going on in that hearing that is not in the record, and that's what they're trying to find out here. They're trying to find out, were they predisposed, did they pay attention, did they consider these arguments, and that I don't know until they take the depositions and I have a record to look at that. It goes solely to the arbitrary and capricious nature of the action of the board, and I think it's a valid thing to bring up on review. And for that reason, I'm going to deny the protective order. I will allow them to go ahead and take the depositions.
Based on this conclusion,[2] the district court denied the school board's motion for a protective order, thus allowing the deposition to proceed. Upon the motion of the school board, however, the district court granted a stay to allow the school board to apply to this court for supervisory review. This court denied the writ application,[3] after which the school board applied for a supervisory and/or remedial writ to the supreme court. The supreme court granted the writ and remanded to this court for briefing, argument, and opinion.[4]

ANALYSIS
In Butler v. Iberville Parish Sch. Bd., 93-2291 (La.App. 1st Cir.12/22/94), 648 So.2d 459, the district court did not conduct a hearing and affirmed the school board's decision based on its review of the transcript of the hearing, exhibits, and briefs. The teacher appealed, alleging, among other things, that she had been precluded from presenting her evidence and getting "full judicial review." This court stated:
The law is clear that judicial review [by the district court] does not require a trial de novo, but the teacher may offer evidence which does not duplicate that presented at the school board hearing.
Butler, 648 So.2d at 461 (citations omitted). The Butler court cited the Howell case, in which the supreme court stated that under the provisions requiring a "full hearing"[5] at the district court level, "a discharged *4 employee of a school board could present additional evidence to that court." Howell v. Winn Parish Sch. Bd., 332 So.2d 822, 824-25 (La.1976). This point of law from the Howell decision was cited with approval by the supreme court in the recent cases of Wise v. Bossier Parish Sch. Bd., 02-1525 (La. 6/27/03), 851 So.2d 1090, 1098, and Spears v. Beauregard Parish Sch. Bd., 02-2870 (La.6/27/03), 848 So.2d 540, 544 n. 2. Therefore, contrary to the school board's argument, the district court is authorized to allow a teacher to present additional evidence when seeking judicial review of a school board's decision.
However, the key factor in this case, differentiating it from the above cases, is that the additional evidence Lee seeks to present is deposition testimony from school board members. The school board claims it performs a quasi-judicial function in reviewing evidence at a hearing and making a decision concerning a teacher's termination or other disciplinary action. Therefore, it argues that the absolute immunity afforded to judges when performing functions integral to the judicial process should be applied to school board members also in these circumstances, citing Durousseau v. Louisiana State Racing Com'n, 98-0442 (La.App. 4th Cir.12/9/98), 724 So.2d 844, 846, writ denied, 99-0034 (La.2/12/99), 738 So.2d 582. In the alternative, if not absolutely immune, the school board contends there should be a showing of "extreme and extraordinary circumstances" before requiring oral testimony from the decision-makers as to the basis for their opinions, as was held in Gary W. v. State of Louisiana, Dep't of Health & Human Resources, 861 F.2d 1366 (5th Cir.1988), and the cases cited therein. Finally, the school board argues that if board members were acting improperly during the hearing, Lee should have filed a contemporaneous objection during the proceedings. By failing to do so, she waived her right to complain that the hearing was conducted unfairly.
Addressing the last contention first, we note that although Lee's petition for judicial review does mention certain actions of the board members, indicating they "ate, drank sodas, and `kibitzed' among themselves," the crux of her complaint does not involve such activities, which were basically admitted by the school board in its answer. Lee's more serious allegation is that the board members were "predisposed" to find her guilty of willful neglect of duty because of actions designed to influence their opinion that occurred before the hearing or off-the-record during breaks in the hearing, causing them to ignore her evidence in an arbitrary and capricious fashion. It is not possible to object during a hearing to something that occurs outside of the hearing. Therefore, we do not find this argument persuasive in this instance.
However, this court finds merit in the school board's other argument that, because the board members were acting in a quasi-judicial capacity, they are entitled to some measure of immunity from unlimited discovery concerning their decision-making process. We do not agree that absolute immunity is applicable in this situation. Based on our research and the cases cited to us by the school board, it appears that cases applying absolute immunity involve tort suits for monetary damages filed against persons who, while sitting on an administrative board of one kind or another, made judicial or quasi-judicial decisions in their official capacities that cause economic losses to the claimants. See, e.g., Durousseau, 724 So.2d 844 (Louisiana State Racing Commission was immune in its quasi-judicial capacity from former jockey's claim for money damages for Commission's allegedly intentional wrongful *5 refusal to reinstate his license); Talbert v. Louisiana State Bd. of Nursing, 03-0258 (La.App. 1st Cir.12/31/03), 868 So.2d 729 (State Board of Nursing was entitled to quasi-judicial absolute immunity from a nurse's and her husband's tort damage claims based on the Board's suspension of her nursing license); Amato v. Office of Louisiana Com'r of Securities, 94-0082 (La.App. 4th Cir.10/3/94), 644 So.2d 412, writ denied, 94-3024 (La.2/3/95), 649 So.2d 410, cert denied, 515 U.S. 1144, 115 S.Ct. 2582, 132 L.Ed.2d 832 (1995) (Commissioner of Securities was absolutely immune from damages claimed for refusing a stockbroker's registration); Brossette v. City of Baton Rouge, 837 F.Supp. 759 (M.D.La.1993), aff'd, 29 F.3d 623 (5th Cir.1994), cert. denied, 513 U.S. 971, 115 S.Ct. 443, 130 L.Ed.2d 353 (1994) (Alcoholic Beverage Control Board members were entitled to absolute judicial immunity from a tort claim alleging a civil rights violation). Unlike the matter before us, those cases did not involve judicial review of the decisions made by those persons. Nor did those cases involve an attempt to compel testimony from board members involved in making those decisions.
In such cases, like the matter before us, a qualified immunity has been recognized that limits the circumstances under which testimony can be compelled from a quasi-judicial officer and/or limits the scope of any such testimony. Although we have not found any published decisions of this court addressing this issue,[6] the federal jurisprudence on this issue was summarized in Standard Packaging Corp. v. Curwood, Inc., 365 F.Supp. 134 (D.C.Ill.1973), as follows:
An exemption from compulsory testimony is recognized in certain situations to protect the integrity and individual responsibility of governmental officials whose duties involve the exercise of judicial and quasi-judicial authority.
* * *
To allow certain exemptions to these officers is not to provide them with a blanket immunity from testimony. Like any testimonial "privilege," this one must be construed and applied with the greatest care for fear that it be misused or abused. And, indeed, the courts have been most scrupulous in delineating between protected and unprotected testimony on a case-by-case basis. In various instances and circumstances, judges, jurors, justices of the peace, and referees have been compelled to testify.
* * *
The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question.... Thus, even though a particular inquiry may be factually directed, it may still be objectionable if it invades upon an official's good-faith decision-making prerogatives. It is apparent, *6 however, that this doctrine does not exempt compulsory testimony as to all factual matters related to those prerogatives.
Standard Packaging, 365 F.Supp. at 135 (citations omitted). This line of demarcation from the Standard Packaging case was recognized as still being the controlling test for compelling testimony from a judicial officer in U.S. v. Edwards, 39 F.Supp.2d 692, 705-06 (M.D.La.1999).
Standard Packaging was also cited in the Gary W. case, in which the court refused to allow the defendant to depose a court-appointed special master concerning the substance of her report before that report became the basis of her formal recommendation to the court. Gary W., 861 F.2d at 1369. Noting that she was acting in a quasi-judicial capacity when she submitted that recommendation, the court stated an examination of her mental processes in making that recommendation would be inappropriate, absent any showing of bad faith, improper behavior, or other extreme or extraordinary circumstances. Id. In a case citing this Gary W. test, the court observed that all areas of inquiry that the plaintiff sought from a federal magistrate were related to the magistrate's mental processes as a judicial officer concerning official duties  an area that, but for the most extraordinary of situations, must be fully protected from outside intrusion. Finding no extraordinary circumstances to justify those inquiries, the court quashed the subpoena. Meyer v. Foti, 720 F.Supp. 1234, 1244 (E.D.La.1989).
These cases suggest to this court that there are actually two tests for determining when to allow testimony from a quasi-judicial officer, depending on which of two types of information is sought. If the information sought concerns relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question, the testimony should be allowed. However, if the inquiry concerns whether the officer had some predisposition or pre-commitment as to the judgment, the testimony should be allowed only if the party seeking the information has demonstrated some extraordinary circumstance that might justify such an inquiry.
There is little jurisprudence involving this second situation in the context of compelling testimony from a quasi-judicial officer. However, some guidelines can be determined from cases involving disqualification or recusal of decision makers on the grounds of having pre-judged the matter. In Matter of Rollins Environmental Services, Inc., 481 So.2d 113, 120 (La.1985), the supreme court said a preconceived position concerning law, policy, or legislative facts would not disqualify an administrative decision maker, nor would that person be disqualified simply by prior exposure to adjudicative facts. Nonetheless, disqualification would be appropriate for the administrative decision maker who has pre-judged the adjudicative facts in dispute. Elaborating on this point, the court explained that the mere exposure to evidence presented in non-adversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing. Thus, a line has been drawn between an advance commitment about the facts and some previous knowledge about the facts. Rollins, 481 So.2d at 120-21. Similarly, in Louisiana State Bd. of Med. Examiners v. Golden, 94-0922 (La.App. 4th Cir.9/29/94), 645 So.2d 690, 691, writ denied, 95-0106 (La.3/10/95), 650 So.2d 1184, the Fourth Circuit granted a writ and reversed the judgment of the district court, which had ordered the pre-hearing depositions of several board members. The physician *7 sought to determine whether the board members had preconceived positions on abortion that would prevent them from giving him a fair and impartial hearing. Analogizing this situation to the grounds upon which a judge could be recused, the court stated:
There is no authorization for general discovery proceedings to determine if ground[s] for recusation exist. The party must "discover" the grounds on his own.... It would not be sufficient just to allege general bias against a party or an issue. Some particular fact must be alleged that if proven would support a finding of bias.
Golden, 645 So.2d at 691. By comparison, in Rubin v. Lafayette Parish School Bd., 93-473 (La.App. 3rd Cir.12/14/94), 649 So.2d 1003, 1016, writ denied, 95-0845 (La.5/12/95), 654 So.2d 351, a divided court indicated that one factor suggesting the school board's decision had been tainted was that a number of allegations had been disseminated to the board members prior to the hearing, but these allegations did not form part of the formal charges filed against the teacher. The court stated:
Although the Board was not called to vote on these extraneous allegations, we cannot say they did not affect the Board's decision to terminate Rubin. The submission of the unscreened statements to the Board further infringed on Rubin's due process right to know the allegations against her and to defend against only those allegations actually charged.
Rubin, 649 So.2d at 1016.
Applying these considerations to the matter before us, we note that Lee has not demonstrated or alleged any bad faith, improper behavior, advance commitment to a particular result, or other extreme or extraordinary circumstances that would justify an examination into the mental processes of the school board members in reaching their decision. However, Lee apparently seeks factual information from the board members concerning what, if any, information was disseminated to them before the hearing. This inquiry would help her and the court know whether the pre-hearing information was the same as the evidence presented at the hearing or differed from that evidence in some respect. The Rollins case would suggest that such an inquiry, although factual, is irrelevant, because the mere prior exposure to factual information does not necessarily imply a predisposition as to the decision. However, such information might assist Lee and the court in determining whether such information could have predisposed the board members toward a particular view of the case. Also, the Rubin case would imply that such an inquiry is relevant to determine whether the teacher has been fully apprised of all the charges leveled against her, or whether other allegations may be lurking in the minds of the board members.
Another line of inquiry might involve the procedures that were used during the tenure hearing. The case against Lee was presented to the school board by one of its attorneys, Ms. Glasper, and procedural matters were handled by another attorney hired by the board, Mr. Grant, who advised the chairman concerning rulings on procedural and substantive matters and virtually presided over the hearing. According to Lee, this situation resulted in "control of the record" by the school board's attorneys. Lee suggests that school board members appeared to have other questions that they wished to ask at the hearing, but were prevented from asking them by Grant's requirement that all questions be submitted to him in writing and passed to him for review. Lee also suggests that certain lines of questions were "tag-teamed" out of the record by *8 Glasper's objecting to them and Grant's recommending that the objections be upheld. The depositions of school board members could reveal whether any of them had other relevant questions that were foreclosed by the procedures used at the hearing.
The removal of a tenured teacher from office can only be accomplished by following the procedures set out in the teacher tenure law,[7] particularly the provisions of LSA-R.S. 17:443. The teacher tenure law must be liberally construed in favor of teachers, since teachers are its intended beneficiaries. Palmer v. Louisiana State Bd. of Elementary and Secondary Educ., 02-2043 (La.4/9/03), 842 So.2d 363, 369. The teacher tenure law has no provisions indicating whether and under what circumstances the testimony of school board members can be compelled when judicial review of a school board's decision is sought.[8] Also, there is little jurisprudence from Louisiana's state courts on this issue in this context. Therefore, the district court had no clear guidelines for its decision, other than its desire to accord Lee her right to full judicial review. Accordingly, we maintain our decision to deny the writ, thus upholding the district court's ruling to allow the school board members to be deposed. However, in accordance with the views expressed in this opinion, we order the court to limit those depositions to relevant matters of fact that do not probe into or compromise the mental processes employed by the board members in formulating their decision.
WRIT DENIED WITH ORDER.
NOTES
[1] Lee indicated her intent was to depose other school board members also.
[2] We note that the district court may have understated its authority in describing the standard for judicial review. On judicial review, the court is to determine whether the action of the school board was (1) in accordance with the authority and formalities of the Louisiana Teachers Tenure Act, and (2) supported by substantial evidence, or conversely, an arbitrary decision and thus an abuse of discretion. Howell v. Winn Parish School Bd., 332 So.2d 822, 825 (La.1976) (emphasis added). There must be a rational basis for the board's determination supported by substantial evidence. Sylvester v. Cancienne, 95-0789 (La.App. 1st Cir.11/9/95), 664 So.2d 1259, writ not considered, 95-3128 (La.1/26/96), 666 So.2d 663.
[3] Lee v. East Baton Rouge Parish Sch. Bd., 03-0711 (La.App. 1st Cir.6/16/03)(unpublished writ action).
[4] Lee v. East Baton Rouge Parish Sch. Bd., 03-2014 (La.11/14/03), 858 So.2d 428, 429.
[5] See LSA-R.S. 17:443(B).
[6] In the case of In re Dyer, 95-2297 (La.App. 1st Cir.6/28/96), 677 So.2d 1075, 1078, writ denied, 96-1967 (La.10/11/96), 680 So.2d 641, this court discussed an assignment of error in which the appellants claimed the Commission on Ethics for Public Employees had erred by prohibiting them from taking depositions of its members. The appellants claimed the testimony sought was essential for the determination of procedural and substantive due process issues and was not sought for the purpose of recusal. In declining to address the issue on appeal, this court stated that the issue was one of several that had been raised in a writ application filed by appellants and had been denied in that respect.
[7] LSA-R.S. 17:441-446.
[8] School boards are also exempt from the Administrative Procedure Act. See LSA-R.S. 49:951(2) and LSA-Const. art. VI, § 44.