543 So.2d 1052 (1989)
Angelletta Gibson, Wife of/and Lee HAWKINS, Individually and on Behalf of their Minor Child, Lee Douglas Gibson
v.
STATE of Louisiana; DEPARTMENT OF HEALTH AND HUMAN RESOURCES for the State of Louisiana; Sandra L. Robinson, M.D., Secretary of the Department of Health and Human Resources; Charity Hospital of New Orleans; Elliot C. Roberts, Sr., Assistant Secretary for Department of Health and Human Resources; Bobbie L. Greaves; Gwendolyn Julion; Patrice Waldrop; Arthea Larson, Director of Saint Vincent's Infant Home; Elander Kenner and B. Foche, M.D.
No. 88-CA-2407.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
*1053 Joel A. Levy, Marrero, for plaintiff-appellant.
Curry & Blankenship, John T. Holmes, New Orleans, for defendants-appellees.
Before GARRISON, KLEES and WILLIAMS, JJ.
WILLIAMS, Judge.
The Hawkins and their infant son seek appellate relief from the trial court's judgment, granting the Motion for Summary Judgment brought by the State of Louisiana, through the Department of Health and Human Resources (DHHR), which resulted in the dismissal of all the Hawkins' claims against the DHHR for its part in the taking of the Hawkins' five week old son for the reason of suspected child abuse, in the breaking of the infant's arm while he was in the custody of the DHHR at St. Vincent's Children's Home, and in failing to return the custody of the infant to his parents after the infant was diagnosed as having Brittle Bone Disease.
The DHHR's Motion for Summary Judgment addressed the issues of the DHHR's immunity under LSA-R.S. 14:403(E) and LSA-R.S. 9:2798.1, the training of its employees and the procedure it followed while taking the infant into custody. The DHHR's motion and/or memorandum in support did not, however, address the issues and circumstances surrounding the injury sustained by the infant or the DHHR's failure to return and/or failure to recommend the return of the infant to his parents after the diagnosis of Brittle Bone Disease was made, even though the Hawkins' pleadings and memorandum in opposition with its exhibits presented these issues as genuine issues of material fact. Consequently, in order to determine whether genuine issues of material fact existed, after hearing the parties' arguments and reviewing the pleadings and the exhibits and answers to interrogatories submitted on the motion, the trial court ordered the DHHR to produce for the court's in camera inspection the infant's case record. And based upon information contained in the case record, the trial court granted the DHHR's motion. From that judgment the Hawkins and their son appeal, claiming the trial court erred by finding no genuine issues of material fact and by ordering the in camera inspection of the infant's case record in order to make that determination.[1] We agree. The DHHR is not entitled to a summary judgment because 1) the immunity provision LSA-R.S. 14:403(E) is inapplicable to the DHHR as it is a public entity and not a person; 2) the immunity provision LSA-R.S. 9:2798.1 is inapplicable to the DHHR in this instance because the DHHR has not made a threshold showing that its actions were either "discretionary" or "policy-making" and assuming arguendo that it had, whether those acts are protected for not being "willfull, outrageous, reckless or flagrant misconduct" remains a genuine issue of material fact; 3) the adequacy of the training of the DHHR caseworkers and supervisors involved is a genuine issue of material fact as their training records are facially deficient under LSA-R.S. 46:285; and 4) the circumstances surrounding the injury of the infant while he *1054 was in the custody of the DHHR and the circumstances surrounding the DHHR's failure to return and/or failure to recommend the return of the infant to his parents after the infant was diagnosed as having Brittle Bone Disease, both involve genuine issues of material fact. Moreover, the trial court's in camera review of the infant's case record was beyond the scope of the summary proceeding and an improper inquiry into the merits of the case, tantamount to a substitute for trial. Consequently, the trial court's judgment is annulled and the DHHR's Motion for Summary Judgment is denied.
FACTS AND PROCEDURAL HISTORY
The plaintiffs, Angelletta Gibson wife of/and Lee Hawkins (the Hawkins), individually and on behalf of their minor son, Lee Douglas Gibson (LDG), instituted this action against the State of Louisiana; the Department of Health and Human Resources; Sandra L. Robinson, M.D., Secretary of the Department of Health and Human Resources; Charity Hospital of New Orleans; Elliot C. Roberts, Sr., Assistant Secretary for the Department of Health and Human Resources; Bobbie L. Greaves, DHHR caseworker; Gwendolyn Julion, DHHR caseworker; Patrice Waldrop, DHHR Supervisor;[2] Arethea Larson, Director of St. Vincent's Infant Home; Elander Kenner; and B. Foche, M.D.[3], because of the following events that occurred between November 24, 1986 and May 12, 1987:
On November 24, 1986, Mrs. Hawkins noticed that her five (5) week old son, LDG, was crying excessively. She therefore brought the infant to the walk-in clinic/emergency room at Charity Hospital of New Orleans where he was examined by Dr. Foche and diagnosed as colic. As the infant continued to cry excessively, Mrs. Hawkins returned to Charity with the infant and a re-examination revealed that the infant's right leg was fractured. Charity admitted LDG and notified the DHHR about the infant's condition. Soon thereafter, B. Greaves, a DHHR caseworker, arrived at Charity and began to interview the infant's treating physicians, Mrs. Hawkins and her relative, Alice Walker. Greaves then contacted the DHHR's contract physician, Samuel Y. Brown, and reported back to her supervisor, Paula Bennett. Apparently, the extent of the DHHR's knowledge was LDG's leg was broken and his mother could not provide a satisfactory account of how the breakage occurred.
As LDG was scheduled to be discharged from Charity on December 1, 1986, the DHHR sought and was granted an emergency hold order and given custody of the infant so as to eliminate any risk of him being harmed further and to allow time for a more extensive investigation. On December 4, 1986 a Juvenile Court hearing was held wherein the DHHR produced its evidence supporting the emergency hold order, after which the Juvenile Court ordered that the infant's custody be continued with the DHHR.
Upon the infant's discharge from Charity, he was placed in St. Vincent's Infant Home, a facility operated by the Associated Catholic Charities of the Archdiocese of New Orleans. While there, on January 23, 1987, nine week old LDG was lifted from his infant seat "by the arms"[4], causing his left arm to fracture. LDG was then taken to Children's Hospital where he underwent a battery of tests to determine whether he suffered from Osteogenesis Imperfecta, more commonly known as Brittle Bone Disease.
After Juvenile Court was informed of LDG's new injury, the court ordered the DHHR to submit a report on LDG's injuries by February 10, 1987. By February *1055 9th, the DHHR had submitted its report which indicated that LDG was undergoing tests and X-rays in order to confirm the diagnosis of Osteogenesis Imperfecta. In response, the court requested the results of LDG's tests by March 18th. However, as the DHHR failed to respond to that request, the court requested the information a second time on March 26th and a third time on May 5th. (See plaintiffs' exhibits) In the interim, on April 29, 1987, in its memo to Juvenile Court in regard to LDG's review hearing scheduled for May 12, 1987, the DHHR commented that it was recommending "that the child be returned to his mother, Angeletta [sic] Gibson, if a diagnosis of Osteogenesis is confirmed and received in writing by the hearing date."[5]
On November 20, 1987, the Hawkins filed this lawsuit claiming on behalf of LDG, $50,000.00 for pain and suffering, $10,000.00 for medical expenses, $50,000.00 for mental anguish and distress and $50,000.00 for loss of consortium, and claiming on their own behalf, $50,000.00 for mental anguish and distress, $100,000.00 for loss of consortium and $50,000.00 for embarrassment and humiliation. The bases of the Hawkins' claims against the DHHR were particularized as follows:
a) Failing to properly train, instruct and supervise their employees and employ competent personnel;
b) Taking into custody the minor child without proper authority, or reasonable grounds;
c) Failing to properly investigate, ascertain or determine the circumstances surrounding the incident;
d) Falsely, negligently and willfully accusing the petitioners of abusing and harming their child;
e) Subjecting the petitioners to extreme mental distress through interrogation, false accusations and refusing to return the child to their care;
f) As well as other acts which shall be shown upon trial hereof.
In July of 1988, the DHHR filed a Motion for Summary Judgment, contending that no genuine issues of material fact existed so that the DHHR is entitled to have all of the plaintiffs' claims against it dismissed. The memorandum in support claims that the DHHR is entitled to Summary Judgment because 1) as shown by the DHHR's answers to plaintiffs' interrogatories "the training and education of its personnel is more than adequate"; 2) the affidavit of B. Greaves shows that the investigation was proper and the taking of LDG into custody was pursuant to Juvenile Court orders; 3) LSA-R.S. 14:403(E) provides civil and criminal immunity to "any person who in good faith make a report ... or any caseworker who in good faith conducts an investigation of child abuse"; 4) the elements of defamation as outlined in Gross v. Haight, 496 So.2d 1225 (La.App. 5th Cir.1986), have not been met and LDG's case record has not been divulged to outside sources because it is confidential under LSA-R.S. 46:56; and 5) LSA-R.S. 9:2798.1 provides immunity for public entities for their policy making or discretionary acts when such acts are within the course and scope of their lawful powers and duties and when such acts do not constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct.
In its memorandum in opposition and supporting exhibits, however, the plaintiffs urge that genuine questions of fact exist as to whether the DHHR properly trained, instructed and supervised its employees because LSA-R.S. 46:285 specifically sets forth that the training required of DHHR child protection caseworkers and supervisors is sixty-four (64) hours of instruction *1056 in set programs and that the DHHR's interrogatory answers patently show that Greaves and Julion have not completed the required training/instruction and whether the DHHR acted in bad faith because after LDG was in the custody of the DHHR, the DHHR obtained information that would cause them to believe the infant was not abused by his parent(s) but, nevertheless, failed to recommend the return of custody and/or to reunite the parents and infant until four months later. The plaintiffs also claim there are genuine issues of material fact as to whether the DHHR conducted its investigation recklessly and willfully because of the paucity of information that led the DHHR to conclude that LDG was an abused child; whether the DHHR was responsible for the breakage of LDG's arm as he was in the custody of the DHHR at the time the accident occurred; and whether the DHHR's failure to recommend or seek the expedited return of LDG to his parents was willful and reckless.
After hearing the parties' arguments on the motion on September 23, 1988, the court took the matter under advisement and ordered the DHHR to produce LDG's case record for the court's in camera inspection. Following the inspection, on October 21, 1988, the trial court ruled as follows:
Title 14, Section 403A requires that certain personnel, including medical personnel and social workers and certain other named persons are expressly required to report suspicious incidents with regard to children, it further provides for immunity from civil and criminal liability to those persons who are mandated by statute to report these suspected cases of child abuse and or neglect. And, in this case, the infant, LDG, was examined by physicians at Charity Hospital who felt that the child, a five week old infant, having suffered a spiral fracture of the tibia, that the injury itself was suspicious and the doctors were of the opinion that in all probability the fracture represented a non accidental injury and they were of the opinion that the injury was more probably the result of abuse.
The mother in this case was interviewed and could not give an adequate explanation for the injury. The Court's [sic] of the opinion that the State's paramount interest in this case is in providing protection to children, and the wisdom of the legislature was to the effect that we must encourage those persons who are mandated by statutes to in fact make those reports of these suspicious injuries and that in order to get their cooperation, the legislature has found it necessary to protect those persons, these reporters, from civil and criminal prosecution. And for those reasons, the Court will grant the Motion for Summary Judgment.
(transcript, pp 3-5)
From this ruling, plaintiffs appeal.
THE MOTION FOR SUMMARY JUDGMENT
Our review of the DHHR's pleadings, affidavits and answers to interrogatories reveals that the DHHR failed to address many of the issues which plaintiffs claim are genuine issues of material fact. For instance, the DHHR's Motion for Summary Judgment does not address whether the DHHR is liable for the acts and/or negligent acts of the employees of St. Vincent's Infant home even though the DHHR was entrusted with the care and custody of the infant at the time his arm was broken and whether after receiving the diagnosis of Brittle Bone Disease, the DHHR was negligent, in bad faith and/or willful and reckless in failing to return or seek to return LDG to his parents, especially as the interest of parents in the custody and control of their children is an interest or right subject to constitutional protection[6].
*1057 Moreover, the DHHR's affidavit by Greaves outlined only the actions taken by the DHHR upon receipt of the report of suspected child abuse. The affidavit did not address the DHHR's failure to return and/or to recommend the return of LDG to his parents soon after the infant's arm was broken at St. Vincent's when the DHHR became aware of his medical condition,[7] despite the plaintiffs' exhibits which show these are genuine issues of material fact. And in light of the training requirements of child protection caseworkers set forth in LSA-R.S. 46:285, the DHHR's interrogatory answers outlining the sparse training of Greaves and Julion raises the issue of whether their training is legally inadequate. Therefore, unless the DHHR is immune from civil liability, the DHHR is not entitled to summary judgment because it failed to sustain its burden of showing an absence of genuine issues of material fact.
In its memorandum in support of the motion, the DHHR strongly urged its immunity under LSA-R.S. 14:403(E). That provision is not applicable to the DHHR, however, as it provides in pertinent part:
No cause of action shall exist against any person who in good faith makes a report, cooperates in an investigation by an agency, or participates in judicial proceedings authorized under the provisions of this Section, or any caseworker who in good faith conducts an investigation, makes an investigative judgment or disposition, or releases or uses information contained in the central registry for the purpose of protecting a child and such person shall have immunity from civil or criminal liability that otherwise might be incurred or imposed...." (emphasis added).
The immunity of LSA-R.S. 14:403(E) extends to persons only, not to public entities such as the DHHR. Nor, in this instance, is the limited immunity provision of LSA-R.S. 9:2798.1[8] applicable to the DHHR.
In its supplemental memorandum in support of its Motion for Summary Judgment the DHHR briefly outlined the language of LSA-R.S. 9:2798.1, but failed to make a threshold showing that its actions were either "discretionary" or "policy-making" so as to entitle it to immunity. See Sun Lake Apts. Resid. v. Tonti Dev. Corp., 522 So.2d 1298, 1304 (La.App. 5th Cir.1988). But, assuming arguendo that the requisite showing had been made, the DHHR failed to show that all of its policy-making and/or discretionary acts were not willful, outrageous, reckless, or flagrant misconduct. Consequently, as neither LSA-R.S. 14:403(E) nor LSA-R.S. 9:2798.1 is applicable, the trial court should have denied the DHHR's Motion for Summary Judgment as the DHHR is not entitled to immunity and as the DHHR failed to sustain its burden of showing no genuine issue of material fact existed.
The law is clear a motion for summary judgment is not a substitute for trial. *1058 Laufer v. Touro Infirmary, 334 So.2d 541, 542 (La.App. 4th Cir.1976); Mecom v. Mobil Oil Corp., 299 So.2d 380, 385 (La.App.3d Cir.1974), writ den., 302 So.2d 308 (La. 1974). The function of the court is not to determine the merits of the issues raised, but only to determine whether there is an issue of material fact. Lachney v. Employers Cas. Co., 281 So.2d 761 (La.App. 3d Cir.1973). Where the court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and answers to interrogatories, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Mashburn v. Collin, 355 So.2d 879, 890 (La.1978).
The party moving for summary judgment has the burden of showing a complete absence of genuine issues of material fact. Mashburn v. Collin, 355 So.2d at 890. If the trial court has doubt concerning the dispute of a material issue of fact, the trial court must resolve the dispute by denying the motion for summary judgment. Laufer v. Touro Infirmary, 334 So.2d at 542. The court may not inquire into the merits of the case, conduct its own investigation, or be influenced by the probable result after trial. See Glass v. Vista Shores Club, 221 So.2d 304 (La.App. 4th Cir.1969); Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 4th Cir.1974), writ den., 302 So.2d 308 (La.1974) [to obtain a summary judgment it is not sufficient to prove that it is unlikely the plaintiff will recover].
Consequently, in order to resolve the question of whether there were genuine issues of material fact, the trial court should not have ordered the production of LDG's case record for the court's in camera inspection. Following the parties' arguments on the merits of the motion, if the trial court had doubt concerning the existence of disputed issues of material fact, the court should simply have denied the DHHR's Motion for Summary Judgment. Laufer v. Touro Infirmary, 334 So.2d at 542. The trial court should not have sua sponte ordered the production of LDG's case record so that it could resolve its doubts with information contained in LDG's case record, a review beyond the scope of a summary proceeding and tantamount to a substitute trial.
Accordingly, we find that the DHHR failed to show an absence of genuine issues of material fact through its pleadings, affidavits and answers to interrogatories and that the trial court went beyond the scope of the summary proceeding by resolving its doubt as to the existence of genuine issues of material fact by inquiring into the merits of the case through the in camera investigation of LDG's case record. The judgment in favor of defendant is, therefore, annulled and the Motion for Summary Judgment is denied. Defendant is cast for all costs.
REVERSED.
NOTES
[1] The Hawkins also contend that the trial court erred in denying their Motion to Compel discovery of their son's case record. At the October 21, 1988 hearing, the trial court orally denied the Motion to Compel based upon its ruling on the DHHR's Motion for Summary Judgment. However, as there is no evidence of a signed judgment denying the Motion to Compel, an appeal of that ruling is premature. LSA-C.C.P. art. 1911.
[2] Greaves, Waldrop and Julion filed an Exception of No Cause of Action pursuant to LSA-R.S. 14:403(E), on September 14, 1988. The disposition of their Exception is not in the record.
[3] The DHHR and Charity Hospital's Exception of Prematurity was maintained and the plaintiffs' petition was dismissed without prejudice as to plaintiffs' medical malpractice claim, as per consent judgment rendered April 12, 1988.
[4] See letter of March 31, 1987, from Yves Lacassie, M.D., LSU Medical Center, to Samuel Y. Brown, M.D., the DHHR's contract physician.
[5] As LDG's case record was returned to the DHHR immediately following the trial court's in camera inspection, this court does not have the benefit of that record. Consequently, we do not know on which date the infant was actually returned to his parents (believed to be May 12, 1987) or what information confirming the Osteogenesis Imperfecta the DHHR received after April 29, 1987. The DHHR, however, did have possession of the March 31, 1987 letter of Dr. Yves Lacassie, Head of Division of Clinical Genetics, Department of Pediatrics, LSU Medical Center, Children's Hospital Genetic Clinic, that stated "[m]y impression was that the family history, the physical exam of both he [LDG] and his father, as well as the findings of the X-rays were quite compatible with an Osteogenesis Imperfecta type I-B of sillence".
[6] In Interest of Howard, 382 So.2d 194, 198 (La. App. 2d Cir.1980); State in the Interest of Driscoll, 410 So.2d 255, 257 (La.App. 4th Cir.1982). The rights of a parent to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and vigilant protection under the law. State in the Interest of C.P., 463 So.2d 899, 903 (La.App. 2d Cir.1985); State in the Interest of A.E., 448 So.2d 183, 185 (La.App. 4th Cir.1984). Moreover, the potential loss to the parent is grievous, perhaps more so than incarceration. State in the Interest of A.E., 448 So.2d at 185.
[7] The DHHR's failure to return/to recommend the return of LDG appears to be plaintiffs' most crucial issue, as the trial court's comments at the October 21, 1988 hearing indicate that the only evidence the DHHR had which justified its taking of LDG was that his leg was broken and his mother could not provide an adequate explanation for the injury. Thus, once the DHHR had an adequate explanation for the injuries so that there was no reason to suspect the parents of child abuse, arguably, the infant should have been returned to his parents.
[8] LSA-R.S. 9:2798.1 provides in pertinent part: Policy-making or discretionary acts or omissions of public entities or their officers or employees

* * * * * *
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.