William H. FORMAN, Jr.

v.

G. Fred OURS, Deputy Disciplinary Counsel, Office of the Disciplinary Counsel; and the Louisiana State Bar Association.

Civ. A. No. 92–0904.

United States District Court, E.D. Louisiana.

Oct. 8, 1992.

Ronald L. Wilson, William H. Forman, Jr., New Orleans, La., for plaintiff.

James Reed Barrow, Office of Disciplinary Counsel, Frank E. Lamothe, III, Galen S. Brown, M. Lizabeth Talbott, Lamothe, Hamilton & Odom, New Orleans, La., for defendants.

ARCENEAUX, District Judge.

Defendants G. Fred Ours ("Ours") and Disciplinary Board of the Louisiana State Bar Association ("Disciplinary Board") separately filed motions to dismiss plaintiff's claims for failure to state a claim upon which relief may be granted. In the alternative, they each ask the court to abstain, find defendants immune from suit, or grant summary judgment. Ours also filed a motion to dismiss for lack of subject matter jurisdiction, and for failure to join a necessary party. Having considered the record, applicable law, and memoranda both in support and in opposition, the court finds both defendants immune from suit and accordingly dismisses plaintiff's claims against them.

The undisputed relevant facts are as follows. One of plaintiff's clients filed a complaint against him with the Louisiana State Bar Association in 1989 because she believed that he overcharged her. The complaint was pursued by Ours, who at that time was Assistant Counsel of the Louisiana State Bar Association and its Committee on Professional Responsibility.[1] The Committee on Professional Responsibility found that plaintiff charged his client an unreasonable legal fee and it decided to publicly reprimand him.[2] While the issue of Forman's public reprimand was pending, he sued his client for a portion of the fee that was the subject of the reprimand.

The Disciplinary Board (formerly the Committee on Professional Responsibility) began a second investigation of Forman, this one regarding the suit against his client. Defendant Ours and plaintiff soon thereafter began negotiations for Forman's consent discipline in the second disciplinary proceeding. Plaintiff submitted a conditional offer and probation agreement, but Ours rejected it and filed charges[3] against Forman alleging violation of the Rules of Professional Conduct relating to the suit against his client.[4] On March 13, 1992, plaintiff filed suit in this court pursuant to 42 U.S.C. § 1983 in which he seeks damages and alleges that defendants have violated his right of access to the courts as guaranteed by the First and Fourteenth Amendments.

LAW

### A. Immunity for Bar–Related Prosecutions

The Supreme Court affords protection for government employees by setting expansive boundaries for official immunity.[5] *Haynesworth v. Miller*, 820 F.2d

1. Since April 1, 1990, he has been employed as an assistant and later deputy disciplinary counsel for the Disciplinary Board, which is the agency created by the Supreme Court of the State of Louisiana to administer the attorney discipline and disability system in Louisiana.

2. Forman appealed the Committee On Professional Responsibility's decision to publicly reprimand him relating to his first disciplinary proceeding. The Louisiana Supreme Court denied his appeal on May 25, 1990. Forman next filed a request for a stay of the public reprimand with the Supreme Court, but the stay was denied. He then filed an ex parte motion to delay publication of the public reprimand, and the Supreme Court granted it. Later, he filed an application for rehearing of a petition to stay the public reprimand. The office of Disciplinary Counsel filed a motion to vacate the order delaying publication and an opposition to the application for rehearing. On July 7, 1990, the Supreme Court stayed the proceedings. Then on September 14, 1990, the court recalled and set aside the stay order and denied reconsideration.

3. In submitting the proposed consent agreement, Forman reserved his right to seek redress against the Disciplinary Board in federal court.

4. The matter remains pending before the Disciplinary Board.

5. This protection, however, does not extend to government employees who act "manifestly or palpably beyond [their] authority." *Haynes-*

1245, 1265 (D.C.Cir.1987). Immunity is either absolute and qualified, and the function an official performs determines which form of immunity applies. Absolute immunity is granted when officials, because of their specialized functions, require greater protection than qualified immunity affords.[6]

Absolute immunity is most commonly given to those who perform prosecutory, judicial, and legislative functions. The Court in *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), gave prosecutors absolute immunity in § 1983 actions for activities "intimately associated with the judicial phase of the criminal process." These activities include initiating a prosecution and presenting a case. *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995.[7]

In *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978), the Court extended *Imbler*'s absolute immunity to officials, sued under 42 U.S.C. § 1983, who act as both judges and prosecutors within a federal administrative agency. The Court found that federal agency adjudicative procedures share common characteristics with the judicial process; it likened the role of an administrative hearing examiner who acts as judge or prosecutor to his judicial counterpart. *Butz*, 438 U.S. at 512–16, 98 S.Ct. at 2914–15.[8] The risk of an unconstitutional act by an official presiding at an agency hearing or prosecuting such an action is outweighed by the

need to preserve the independent judgment of the official, the Court found. *Id.* at 514, 98 S.Ct. at 2915. The Court reasoned that the discretion officials exercise in initiating administrative proceedings might be distorted if their immunity were less than absolute. *Id.*[9]

■ The distinction the Supreme Court drew between prosecutorial acts in the judicial phase as opposed to the investigative phase of proceedings requires courts to weigh several factors in deciding how to categorize a defendant's activities. The status of the defendant, the nature of the alleged acts, and the utility of granting immunity must be analyzed in light of the facts of the case. *Simons v. Bellinger*, 643 F.2d 774, 777 (D.C.Cir.1980). The title borne by the official is not determinative. For example, an official who performs the duties of a prosecutor but is not called a prosecutor may, nonetheless, be entitled to absolute immunity. *Simons*, 643 F.2d at 778 (quoting *Butz*, 438 U.S. 478, 98 S.Ct. 2894).

The United States Court of Appeals for the Fifth Circuit grants absolute immunity to members of administrative boards that regulate lawyers and securities dealers. Once a complaint raises the possibility of an immunity defense, the court requires the plaintiff to allege with particularity all material facts that refute immunity. *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985).

worth v. Miller, 820 F.2d 1245, 1265 (D.C.Cir. 1987).

**6.** Implicit in the grant of absolute immunity is the recognition that the victim of an abuse of office may receive no recompense. *Austin Mun. Sec. Inc. v. National Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676 (5th Cir.1985).

**7.** The Court has refused to grant prosecutors absolute immunity for their investigative functions that are not closely linked to prosecution. *Burns v. Reed*, —— U.S. ——, —— ——, 111 S.Ct. 1934, 1944–45, 114 L.Ed.2d 547 (1991). The Court denied absolute immunity to the prosecutor in *Burns* for giving legal advice to police. *Burns*, —— U.S. at —— ——, 111 S.Ct. at 1944–45. However, the Court held that the same prosecutor had absolute immunity for his court appearance in support of an application

for a search warrant and the presentation of evidence at that hearing. *Id.* —— U.S. at ——, 111 S.Ct. at 1942.

**8.** For example, a federal hearing examiner or administrative law judge's work is "functionally comparable" to the work of a judge. He may issue subpoenas, rule on proffers of evidence, regulate the hearing, and make decisions. *Butz*, 438 U.S. at 512, 98 S.Ct. at 2914. An agency official acting as a prosecutor likewise is analogous to a prosecutor. He makes the decision to initiate prosecution and may have discretion in deciding what sanctions should be sought. *Id.* at 514, 98 S.Ct. at 2915.

**9.** The decision to authorize proceedings likely could provoke retaliation by the defendant seeking vengeance in the courts, the Court noted. *Id.* at 514, 98 S.Ct. at 2915.

In *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir.1986), the court did not reach the issue of absolute immunity for state bar employees because the defendant bar employees pleaded only that they were entitled to qualified good faith immunity. *Bishop*, 791 F.2d at 438. However, the court, in dicta, recognized that courts have given broad immunity to members of bar grievance committees. *Id.*

In *Austin Mun. Sec. v. National Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 692 (5th Cir.1985), the court granted absolute immunity to members of District Business Conduct Committees (DBCC) who disciplined members of the National Association of Securities Dealers (NASD). *Austin Mun. Sec.*, 757 F.2d at 689–92. The court in finding the members immune, applied the three-part test it derived from *Butz*. The court analyzed whether:

(1) The official's functions share the characteristics of the judicial process;

(2) The official's activities are likely to result in recriminatory lawsuits by disappointed parties; and

(3) Sufficient safeguards exist in the regulatory framework to control unconstitutional conduct.

*Austin Mun. Sec.*, 757 F.2d at 688.

The court found that the officials acted as judges and prosecutors in disciplining the security dealers; that they likely would be targets of recriminatory lawsuits by the parties they prosecuted; and that regulations and statutes adequately protected defendants from unconstitutional conduct. *Id.* at 688–89.

Other circuits have granted bar committees absolute immunity in disciplining lawyers. The District of Columbia Circuit in *Simons* held that members of the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law have absolute immunity in determining compliance with laws and rules governing the practice of law in the District of Columbia. *Si-*

*mons*, 643 F.2d at 782. The court, citing *Butz*, found that the committee members resemble prosecutors because they are charged with initiating disciplinary actions. They begin litigation, prepare cases, conduct trials, and negotiate settlements.[10] The recognition of the similarity between prosecutors and bar committee members is essential to the courts' "virtually unanimous" recognition of immunity for bar officials. *Simons*, 643 F.2d at 779. *See also Kissell v. Breskow*, 579 F.2d 425 (7th Cir. 1978) (granting absolute immunity to executive secretary of Disciplinary Commission of Indiana who instituted disciplinary suit); *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir.1966) (holding that Washington State Bar Association acted as an "integral part of the judicial process" when it instituted disciplinary proceeding).

The Tenth Circuit in *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508, 1513 (10th Cir.1987) (cert. denied), held that members of Colorado's board of medical examiners were entitled to absolute immunity when disciplining doctors. The court, citing *Butz*, gave board members immunity because they perform statutory functions that are both adjudicatory and prosecutorial in nature. The Board members act as prosecutors in initiating complaints, beginning hearings, making investigations, taking evidence and issuing subpoenas. They also act as judges and, therefore, perform duties that are "functionally comparable" to a court of law. *Horwitz*, 822 F.2d at 1515. The court found that it needed to insure that individual board members could perform their jobs without harassment or intimidation. *Id.* at 1515.[11]

### B. Sovereign Immunity

█ The Eleventh Amendment prohibits suit against a state in federal court unless the state consents.[12] *See generally* Wright, *Law of Federal Courts* § 46 (1983); 13 Wright, Miller, & Cooper, Jurisdiction § 3524.

---

**10.** The court, citing *Dacey v. New York County Lawyers Ass'n*, 423 F.2d 188 (2d Cir.1969) (cert. denied), noted that the parallel between prosecutors and bar association committees is well established. *Simons*, 643 F.2d at 778.

**11.** The court noted that adequate due process safeguards exist under Colorado law to protect against unconstitutional conduct without the need for private damage suits against board members. *Id.* at 1515.

**12.** The Fifth Circuit has held that the Eleventh Amendment bars § 1983 actions against the State Bar of Texas because it is a state agency.

Defendants in suits brought pursuant to 42 U.S.C. § 1983 must be "persons" or local governments as defined in *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court in *Monell* held that local governments may be sued for monetary, declaratory or injunctive relief. Since the state is neither a "person" nor a local government under § 1983 and, therefore, remains immune under the Eleventh Amendment, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), limits relief that can be demanded from a state officer. Such an official can be enjoined from performing an act, but he cannot be required to pay damages because any money awarded would amount to a levy of money from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (reh'g denied).

## ANALYSIS

Forman brought this § 1983 action for damages against the Louisiana State Bar Association and its deputy disciplinary counsel. Defendant Ours, deputy disciplinary counsel for the Bar Association, avers that he is absolutely immune from suit. The court agrees.[13]

Applying the Fifth Circuit's version of the three-part *Butz* test, Ours may not be held liable for damages in this § 1983 action. First, Ours acted as a prosecutor. As assistant disciplinary counsel for the Disciplinary Board, Ours investigated Forman after the attorney sued his client for fees. He also filed disciplinary charges against him stemming from that investigation. The act of which plaintiff complains is Ours' filing and prosecuting the second disciplinary charge. Thus, Ours' actions are akin to a prosecutor pursuing charges in a criminal case. Like the bar committee members in *Simons,* Ours began litigation and prepared the case against Forman who was accused of violating disciplinary rules.

Second, Ours' activities were likely to result in recriminatory lawsuits by disappointed parties. As evidenced by this and other bar disciplinary cases cited herein, disgruntled lawyers do indeed challenge disciplinary agencies which reprimand them.

Third, sufficient safeguards exist in Louisiana's regulatory framework to protect against potential unconstitutional conduct by Ours and the disciplinary board.

The Bar Association and Disciplinary Board were created by Section 4 of Rule 19 of the Rules of the Louisiana Supreme Court, and Sections 5(A) and 5(B) of Article V of the Constitution of the State of Louisiana. The Louisiana Supreme Court oversees the operation of the disciplinary board and hears appeals from its decisions. Those disciplined enjoy essentially unfettered rights to appeal the Disciplinary Board's decisions and to challenge the constitutionality of any action taken by the Disciplinary Board or the Supreme Court.

Ours and other quasi-prosecutors must be free to pursue charges against lawyers. Granting Ours absolute immunity does not deprive disciplined lawyers of their the constitutional rights but instead protects individual clients and society, the ultimate beneficiaries of a well-policed bar. Ours acted as a prosecutor when he brought the disciplinary action against Ours, and he is entitled to absolute immunity.

The Disciplinary Board is an arm of the state, and plaintiff acknowledges such in his complaint. Because the Disciplinary Board is an arm of the state, the Eleventh Amendment shields it from damage suits such as this.

For the reasons herein, defendants' motion for dismissal of plaintiff's claims is GRANTED.

IT IS SO ORDERED.

---

*Bishop,* 791 F.2d at 438 (citing *Krempp v. Dobbs,* 775 F.2d 1319, 1321 & n. 1 (5th Cir.1985)).

**13.** The court has given plaintiff the benefit of the doubt in assuming for the purposes of this motion that he has stated a colorable claim under 42 U.S.C. § 1983.