John Henry **BROSSETTE**

v.

**CITY OF BATON ROUGE, et al.**

**Civ. A. No. 90–840–B.**

United States District Court,
M.D. Louisiana.

Oct. 14, 1993.

---

Benn Hamilton, Matthews & Ranel, Baton Rouge, LA, for plaintiff.

William Michael Stemmans, Baton Rouge, LA, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

On March 31, 1989, John Henry Brossette, the owner and operator of the Old Five Crown Social Club, was served with a notice issued by the Alcoholic Beverage Control Board (ABCB) stating that Brossette had violated Baton Rouge Ordinance 8787, Section 6.A.1(10).[1]  Specifically, Brossette was

---

1. This ordinance provides that an alcoholic beverage permit holder on licensed premises is not allowed to:

Commit, attempt, conspire, aid, abet or encourage any persons to commit any acts or things prohibited by this ordinance, by the East Baton Rouge Code, by the provisions of

charged with operating his establishment in a manner reasonably anticipated to have an adverse effect on the public health, safety or morals.

A hearing on the violation was set for April 6, 1989 before the ABCB. plaintiff's attorney, who was retained in the afternoon of that very same day, formally and informally requested that the hearing be continued. The requests were denied summarily by the Director of the ABCB. The board then voted to suspend plaintiff's license for one year. Brossette immediately appealed the Board's decision to the Nineteenth Judicial District Court for the Parish of East Baton Rouge. After holding a status conference with the parties on April 13, 1989, the state trial court remanded the matter back to the ABCB for a new hearing.

A second hearing was held on June 1, 1989. At the conclusion of the second hearing, the ABCB voted four to three to suspend Brossette's license for a period of six months beginning on June 2, 1989. The evidence relied upon by the ABCB in reaching its decision included complaints which various individuals had made to local law enforcement officials concerning the activities in the vicinity of the club. Brossette again appealed the ABCB's ruling to the Nineteenth Judicial District Court for East Baton Rouge Parish. The state trial court affirmed the decision of the ABCB. The trial court held that it could only review the findings of the ABCB to see if they were supported by the record. The Louisiana First Circuit Court of Appeal affirmed the decision of the trial court in an unpublished opinion.[2] A writ was then granted by the Louisiana Supreme Court.[3]

After hearing the matter, the Louisiana Supreme Court reversed the decisions of the lower courts. The Louisiana Supreme Court held that Brossette was entitled to a de novo trial before the state district court. The Supreme Court further held that the district court should have excluded the various complaints made to law enforcement officials as hearsay.[4] The court, in its conclusion, noted that:

> There was one murder at the Club and one serious fight. There were numerous arrests in the vicinity, a high crime area. There was no evidence that Brossette committed, attempted, conspired, aided, abetted or encouraged anyone to commit any act adversely affecting the public health, safety or morals. On the contrary, Brossette cooperated with the police, employed police protection for his Club and suffered from its location in a high crime area. Brossette acted as a police informant and tried to protect both his premises and his customers. Crime in the area was not a sufficient basis to close the Club.[5]

On August 31, 1990, more than one year after the Board had revoked his license, Brossette filed this suit seeking damages pursuant to 42 U.S.C. § 1983 from the ABCB, the Director, and members of the ABCB, the Chief of Police for the City Police, and the City of Baton Rouge. This Court stayed the federal suit pending a decision from the Louisiana Supreme Court. On March 4, 1993, the federal suit was reinstated on the court's docket. Defendants then filed a motion for summary judgement based on two grounds: (1) they are entitled to absolute or qualified immunity and, (2) Brossette's claim under 42 U.S.C. § 1983 has prescribed. The Court finds that summary judgment should be granted on both grounds.

any applicable Louisiana Revised Statutes or laws, or applicable laws of the United States or any other country, pertaining to: (1) any alcoholic beverages as described in Section 1.A. herein, (2) any illegal distribution of any Controlled Dangerous Substance, (3) soliciting for prostitution, (4) pandering, (5) letting premises for prostitution, (6) gambling, (7) letting premises for gambling, (8) contributing to the delinquency of juveniles, (9) keeping a disorderly place, or (10) any act which might adversely affect the public health, safety or morals.

**2.** *Brossette v. Alcoholic Beverage Control Board,* 601 So.2d 37 (La.App. 1st Cir.1992).

**3.** *Brossette v. Alcoholic Beverage Control Board,* 604 So.2d 1298 (La.1992).

**4.** *Brossette v. Alcoholic Beverage Control Board,* 611 So.2d 1391 (La.1993).

**5.** *Brossette,* 611 So.2d at 1394.

**762**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[7] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[8] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[9]

■ Although there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983, it is well established that federal courts borrow the forum state's general personal injury limitations period.[10] Consistent with the practice of borrowing state statutes of limitations for § 1983 claims, federal courts also look to state law for its tolling provisions.[11] However, federal law governs when a cause of action arises.[12] A federal cause of action arises when the plaintiff knows or has reason to know of the injury which is the basis of the action.[13]

Both parties agree on the dates material to the Court's inquiry as to whether Brossette's § 1983 claim prescribed. There is no dispute that the ABCB meeting during which the ABCB voted to suspend Brossette's license for six months took place on June 1, 1989. There is also no dispute that Brossette received notice of the suspension on June 2, 1989. The record reveals that Brossette filed his federal suit in this Court on August 31, 1990. Therefore, there are no genuine issues as to any material facts on the prescription issue.

■ The limitations period applicable to Brossette's § 1983 claim is the one-year prescriptive period set forth in Article 3492 of the Louisiana Civil Code.[14] Brossette's cause of action arose on June 2, 1989, the date he received notice of the suspension of his license.[15] Brossette's claim prescribed on Monday, June 4, 1990.[16]

■ Instead of arguing that the prescriptive period was interrupted, Brossette argues that the suspension of his license is in the nature of a continuing injury and that his claim would have prescribed on December 2, 1990 if he had not filed his complaint. This argument is without merit. In deciding whether an act constitutes a continuing injury for claims under 42 U.S.C. § 1983, the Court may look to Title VII cases as well as

**6.** Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil Exploration & Production Co.,* 969 F.2d 1559 (5th Cir.1992); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986).

**7.** *Cormier,* 969 F.2d at 1560.

**8.** *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–7, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991); *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

**9.** *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *Cormier,* 969 F.2d at 1560.

**10.** *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992).

**11.** *Burge v. Parish of St. Tammany,* 996 F.2d 786, 788 (5th Cir.1993).

**12.** *Jackson,* 950 F.2d at 265; *Ford v. Stone,* 599 F.Supp. 693, 694 (M.D.La.1984), *aff'd without op.,* 774 F.2d 1158 (5th Cir.1985).

**13.** *Id.*

**14.** *Elzy v. Roberson,* 868 F.2d 793, 794–5 (5th Cir.1989); *Davis v. Louisiana State University,* 876 F.2d 412, 413 (5th Cir.1989).

**15.** Defendants' Memo. in Support, p. 5; Complaint, ¶ XXIII.

**16.** *See* Fed.R.Civ.P. 6.

§ 1983 cases.[17] In *Delaware State College v. Ricks,* the United States Supreme Court instructed lower courts to distinguish between an act of discrimination and its effects when assessing whether an act amounts to a continuing violation under Title VII.[18] Judge Alvin B. Rubin gave his interpretation of *Ricks* in a case pending before the Fifth Circuit as follows:

> If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.[19]

The suspension of Brossette's license clearly falls within the single act category delineated by Judge Rubin. The single act which is the source of the alleged violation of Brossette's civil rights was the decision by the ABCB to suspend his license on June 2, 1989. The alleged violation as the decision rendered by the Board. Each day of the suspension ordered by the Board does not constitute a "separate act." Thus, Brossette's cause of action accrued on June 2, 1989.

■ The prescriptive period was neither interrupted nor tolled by Brossette's appeals to the state courts for a review of the ABCB's decision. In *Ubosi v. Sowela Technical Institute,*[20] a student alleged that she was wrongfully dismissed from the school's nursing program. The court held that the student's resort to the statutory "grievance procedure ... did not interrupt the running of prescription of her damage suit against Sowela for wrongful termination." [21]

This Court has reached a similar conclusion in *Ford v. Stone.*[22] In *Ford,* a plaintiff brought suit pursuant to 42 U.S.C. § 1983 contending that his employer violated his civil rights in discharging him from employment. Prior to filing his suit in federal court, the *Ford* plaintiff had filed a suit in state court alleging that his employer had violated his civil rights protected by the Louisiana Constitution. This Court held that the filing of the state court suit did not interrupt the running of prescription on the federal court suit because, in state court, the plaintiff did not raise his "federal claims in a manner sufficient to interrupt prescription." [23] Furthermore, it is clear that the time period to file a suit which charges violations of 42 U.S.C. §§ 1981 and 1983 is not interrupted or suspended by filing a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5.[24] Plaintiff also sued the Chief of Police for actions which allegedly occurred in 1988. This claim is clearly prescribed.

■ Additionally, a review of the Board's structure reveals that the Board and its individual members are entitled to absolute judicial immunity. The Board is vested with adjudicative powers to determine questions of fact pertaining to claims of violations of city ordinances. Thus, the commission is also clothed with procedural trappings typically associated with a common-law finder of fact. It may compel and hear evidence, make findings of fact, decide whether a party's license should be revoked or suspended or other sanctions should be imposed. Its decisions are appealable to the state district court on a de novo basis. In short, the Board's functions entitle it to absolute judicial immunity.[25]

■ The Court must now determine whether individual members of the board are

---

**17.** *Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983).

**18.** 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).

**19.** *Perez,* 706 F.2d at 733–4; *Jackson v. Galan,* 868 F.2d 165, 168 (5th Cir.1989).

**20.** 584 So.2d 340 (La.App. 3rd Cir.1991).

**21.** *Ubosi,* 584 So.2d at 342.

**22.** 599 F.Supp. 693 (M.D.La.1984).

**23.** *Ford,* 599 F.Supp. at 696.

**24.** *Taylor v. Bunge Corp.,* 775 F.2d 617 (5th Cir. 1985).

**25.** *Mylett v. Mullican,* 992 F.2d 1347 (5th Cir. 1993).

entitled to absolute immunity. The Fifth Circuit Court of Appeals recently set forth the factors to be considered by the court in reaching this decision in *Mylett v. Mullican.*

When determining whether a state governmental officer is entitled to absolute immunity we examine the character of the officer's duties and the relationship to the parties. If the officer's duties are of a judicial nature we must then weigh the costs and benefits of denying or affording absolute immunity. Our analysis is informed by reference to the following factors: (a) the need to assure that the individual defendant can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damage as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; (f) the correctability of error on appeal. No one factor is controlling and the list of considerations is not intended to be exclusive. After considering these factors and the Commission's role in this case, we conclude and hold that the individual Commissioners are entitled to absolute immunity for the performance of their official duties.

Considering these factors, the Court concludes that the individual members of the Board are entitled to judicial immunity.

The City of Baton Rouge is sued because of the Board's actions. This suit is also without merit.

Therefore:

IT IS ORDERED that defendants' Motion for Summary Judgment be and the same hereby is GRANTED.

IT IS FURTHER ORDERED Defendant John C. Welborn's Motion to Dismiss be and is DENIED as moot.

IT IS FURTHER ORDERED that plaintiff's suit is hereby dismissed with prejudice.

Judgment shall be entered accordingly.