724 So.2d 844 (1998)
L.J. DUROUSSEAU
v.
LOUISIANA STATE RACING COMMISSION.
No. 98-CA-0442.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1998.
Writ Denied February 12, 1999.
Catrice A. Johnson, Maurice A. Williams, Rejohnna B. Mitchell, New Orleans, for Plaintiff/Appellant.
Richard P. Ieyoub, Attorney General, Kim Raines Chatelain, Assistant Attorney General, New Orleans, for Defendant/Appellee.
Before BYRNES, ARMSTRONG and McKAY, JJ.
*845 ARMSTRONG, Judge.
This is an action seeking monetary damages against the Louisiana State Racing Commission ("LSRC") for alleged wrongful denial of a jockey's license. The trial court maintained the LSRC's exception of no cause of action. Because the LSRC is immune from liability with respect to the plaintiff's claim, we affirm the judgment of the trial court.
The plaintiff is a jockey. In March 1982, he testified, under a grant of immunity as to criminal prosecution, of his involvement in the fixing of a horse race. According to the plaintiff's allegations, his jockey's license was revoked, then reinstated and then, after expiration, was not reinstated during 1982 and 1983. The plaintiff sued the LSRC with respect to his jockey's license in 1984 and ultimately, in 1985, that suit was dismissed with prejudice and no appeal was taken.
In October 1993, the plaintiff again applied to the LSRC for reinstatement of his racing license. The LSRC denied that application. In December 1993, the plaintiff filed the present action against the LSRC. In its original form, the plaintiff's petition in this case sought "judicial review" (presumably, under the Administrative Procedure Act, La. R.S. 49:950 et seq.) of the LSRC's decision to deny him a jockey's license, as well as an injunction and writ of mandamus to compel the LSRC to license him as a jockey, but did not seek monetary damages. By a consent judgment, the trial court remanded the matter to the LSRC for the LSRC to hold a hearing. The LSRC held that hearing and, as a result, reinstated the plaintiff's jockey's license. At that point in the proceedings, the plaintiff had received from the LSRC all the relief sought by his original petition in this actioni.e. reinstatement of his jockey's license.[1]
However, immediately after his license was reinstated, the plaintiff amended his petition to, for the first time, seek monetary damages from LSRC for the LSRC's earlier refusal to reinstate his jockey's license. Briefly stated, the plaintiff alleges intentional wrongdoing by the LSRC in connection with LSRC's prior refusal to reinstate his jockey's license and that that intentional wrongdoing of LSRC caused him financial damages because, without a jockey's license, he could not work as a jockey.
The LSRC filed exceptions of no cause of action, res judicata and prescription. The trial court sustained the exception of no cause of action (and, consequently, did not address the exceptions of res judicata and prescription) and dismissed the plaintiff's action. The plaintiff appeals that dismissal.
Because the plaintiff's action was dismissed on an exception of no cause of action, we must assume that the factual allegations of the plaintiff's petition, as amended, are true. La.Code Civ. Proc. art. 931; Vogt v. Board of Levee Commissioners, 95-1187 (La. App. 4 Cir. 9/4/96), 680 So.2d 149. We have so assumed the truth of the plaintiff's factual allegations in our above recitation of the facts.
The trial court held that the LSRC is immune "in its quasi-judicial capacity" from the plaintiff's claim for money damages for alleged intentionally wrongful refusal to reinstate the plaintiff's jockey's license. We agree with the trial court. We also note that, in this appeal, we address only the plaintiff's claim for money damages as his claims for judicial review, injunction and mandamus were rendered moot when the LSRC reinstated the plaintiff's jockey's license.[2]
The LSRC is created by statute and given the duty and authority to, among many other *846 things, grant or refuse jockey's licenses. La. R.S. 4:150. In carrying out its duties, the LSRC's hearings, practices and procedures are governed by the Administrative Procedure Act. La. R.S. 4:154. The LSRC may, among other things, summon witnesses, administer oaths, require testimony and compel production of certain types of documents. La. R.S. 4:153. Failure to appear, produce documents or testify before the LSRC is punishable by fine or imprisonment. Id. Generally speaking, the LSRC, as an administrative body adjudicating matters such as licensing, functions analogously to a court. See Caracci v. Louisiana State Racing Commission, 556 So.2d 1249 (La.1990); Boxie v. Louisiana State Racing Commission, 618 So.2d 490, 492-93 (La.App. 4th Cir.1993). "Hearings and determinations by administrative agencies are often quasi-judicial, for, like courts, these bodies adjudicate important rights." Bowen v. Doyal, 259 La. 839, 253 So.2d 200, 203 (1971). Accord Jordan v. City of Baton Rouge, 93-2125 (La.App. 1 Cir. 3/10/95), 652 So.2d 701, 704.
As to a judge of a court, it is well-settled that the judge has an absolute immunity from liability when the judge performs a function that is integral to the judicial process. Amato v. Office of Commissioner of Securities, 94-0082 (La.App. 4 Cir. 10/3/98), 644 So.2d 412, 418, cert. denied, 94-3024 (La.2/3/95), 649 So.2d 410; Johnson v. Foti, 583 So.2d 1210 (La.App. 4th Cir.1991). Because many administrative boards and commissions have a quasi-judicial function when they adjudicate matters like licenses, Bowen, supra; Jordan, supra; it has become common to recognize quasi-judicial immunity, equivalent to judicial immunity, for such boards and commissions (and their individual members) for their actions taken and decisions made in their adjudicative role.
For example, in Brossette v. City of Baton Rouge, 837 F.Supp. 759 (M.D.La.1993), aff'd mem., 29 F.3d 623 (5th Cir.1994), cert. denied, 513 U.S. 971, 115 S.Ct. 443, 130 L.Ed.2d 353 (1994), a liquor licensee sued an alcoholic beverage control board and its individual members for alleged wrongful suspension of his license. The Brossette court held that the board was entitled to absolute immunity:
Additionally, a review of the Board's structure reveals that the Board and its individual members are entitled to absolute judicial immunity. The Board is vested with adjudicative powers to determine questions of fact pertaining to claims of violations of city ordinances. Thus, the commission is also clothed with procedural trappings typically associated with a common-law finder of fact. It may compel and hear evidence, make findings of fact, decide whether a party's license should be revoked or suspended or other sanctions should be imposed. Its decisions are appealable to the state district court on a de novo basis. In short, the Board's functions entitle it to absolute judicial immunity.
837 F.Supp. at 163. The Brossette court relied upon Mylett v. Mullican, 992 F.2d 1347 (5th Cir.1993), in which the court held that the members of a city civil service commission, when acting in their adjudicating role, were entitled to quasi-judicial absolute immunity. See also Forman v. Ours, 804 F.Supp. 864 (E.D.La.1992) (holding disciplinary counsel of bar association absolutely immune and discussing absolute immunity of administrative adjudications).
A seminal case establishing quasi-judicial absolute immunity in the context of administrative adjudications is Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), in which the Court held:
We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. The conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court. As the Bradley opinion points out: "When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the disappointment occasioned by an adverse decision, often finds vent in imputations of [malice]." 13 Wall. at 348, 20 L.Ed. 646. Moreover, federal administrative *847 law requires that agency adjudication contain many of the same safeguards as are available in the judicial process. The proceeding are adversary in nature. See [Federal Administrative Procedure Act] 5 U.S.C. § 555(b) (1976 ed.). They are conducted before a trier of fact insulated from political influence. See § 554(d). A party is entitled to present his case by oral or documentary evidence, § 556(d), and the transcript of testimony and exhibits together with the pleadings constitute the exclusive record for decision. § 556(e). The parties are entitled to know the findings and conclusions on all of the issues of fact, law, or discretion presented on the record. § 557(c).
438 U.S. at 512-13, 98 S.Ct. at 2914. Like the administrative proceedings described in Economou, the LSRC's hearings are subject to Louisiana's Administrative Procedure Act and are subject to judicial review. La. R.S. 4:154; La. R.S. 49:964. Also like the proceedings described in Economou, the LSRC's adjudication hearings share enough of the characteristics of the judicial process that we believe that the LSRC should be immune from suits for money damages based upon the LSRC's acts undertaken in its adjudicatory role. Although the Economou Court, like many of the decisions in this area, focused on the immunity of the individual persons involved in the administrative adjudication, we believe that the policies of quasi-judicial immunity, preserving the independence of judgment of the adjudicators by foreclosing any possibility of intimidation or deterrence through the threat or actuality of suits for damages, see 438 U.S. at 514, 98 S.Ct. at 2915, are not much less applicable when the claim is made, as in the present case, against the board or commission involved rather than against the individual persons who are its members. In addition, we believe that the factors reducing the need for a cause of action for money damages due to wrongful administrative adjudication, the procedural protections of the Administrative adjudication, 438 U.S. at 512-513, 98 S.Ct. at 2914-15, are as fully applicable with respect to the LSRC itself as to its members.
We hold that the LSRC has quasi-judicial absolute immunity as to claims for money damages based upon acts of the LSRC undertaken by LSRC in its adjudicatory role.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The LSRC's brief states that, technically, the LSRC's decision on remand restored the plaintiff to "good standing" so that he was eligible to be licensed but did not actually, in itself reinstate the plaintiff's license. While the LSRC'S description of its action may, technically, be more accurate, there is no doubt that the LSRC, on remand from the trial court, took the action sought by the plaintiff.
[2] The trial court, as an additional, independent reason for sustaining the LSRC's exception of no cause of action, cited La. R.S. 9:2798. That statute is not applicable, on the face of the plaintiff's petition, because the plaintiff alleges intentionally wrongful conduct. La. R.S. 9:2798.1(c)(2). See, e.g. Hawkins v. State, DHHR, 543 So.2d 1052, 1057 (La.App. 4th Cir.1989).